Emerson v. Thomas Dart Michael Greco and I represent the plaintiff appellant Paula Emerson. I would turn first to the Facebook posting. This is a Facebook posting which is, I have to say at the outset, and I did before Judge Shader, there's no question that it is intemperate and reckless. The question, of course, of the burden on the defendant in the Rule 37B motion, which Judge Shader, I submit, misapplied, is to establish that there actually was tampering or some disruption of the truth-finding process and indeed some threat, some improper threat directed to the persons who received the communication, the 1,600 members of the Sheriff's Union Facebook page. So from taking that point, it's actually hard for me initially to read the all capital letters statement, that messing with me will get you your own certified mail as anything but a threat to bring a lawsuit. And at a minimum, I can't see how Judge Shader abused his discretion in interpreting it that way. I mean, there's lots more. You know what it says as well as I do. Certainly, Your Honor. A, it could be a subpoena as well as a lawsuit. You know, don't get in a fight that's not yours. Messing with me will get you your own certified mail. Right. The judge could see this as an effort to interfere with the willingness of those 1,600 people to cooperate in the litigation. But it's also very public. It's a very public communication. Because people are weird. I mean, people put all sorts of stuff on Facebook that I wouldn't myself. I agree with you, Your Honor. Yes, I would not have counseled this. I certainly would disavow it, and my client would as well. The problem is if the threat is of a lawsuit, that by itself, a fortiori, invokes legal process. It's not a threat like in Cassidy v. Cassidy to embarrass your my brother-in-law, embarrass your husband about his alcoholism or his secret facts. The threat of bringing a lawsuit against somebody who cooperates with a different lawsuit is fine? It's not fine, but it is within the realm of speech that ordinary people engage in. And I submit that it's not the type of speech which would improperly tamper with a witness or improperly interfere with a witness's willingness to cooperate in a lawsuit. There are a lot of words in the posting, but it specifically targets liars and brown-nosers. I would submit that Ms. Emerson used brown-noser as a colloquialism for a sycophant or someone who is overly willing to try to kowtow or grief. This is a PSA for those of you, public service announcement, right, for those of you still believing that being a liar or brown-noser will get you something. That's right. And get you a lawsuit. Right, yes. And so I submit that she is attempting in an extremely truculent way to target people who would And to say, don't come forward. To the people who are liars in her submission. In her view. In her view, yes. That, I believe, is the target audience of the group. There's no case that I've found that really is analogous to this. It's a reckless, sorry, Judge, it is an extremely reckless Facebook rant. There's no question about it. But it just isn't the type of conduct that is brought forth in these other cases that the opponent has cited and that I've found. For instance, the closest one I would submit is Ty's versus Soft Belly's case, that Judge Posner's decision on the Beanie Babies case. There, I guess it was Ty Warner, the plaintiff's principal, clearly approached the witness, Nazemian, who was going to be called by Soft Belly's as to whether Beanie's had encountered and had garnered non-protected generic status. Nazemian, the witness, said that he was approached by Mr. Warner. He didn't want to testify, but it came out that he didn't want to testify because he was possibly going to do business down the road with Mr. Warner. Specifically, Mr. Warner did not want Mr. Nazemian to testify, and he told him so. He did not want him to testify. That was why the witness said he did not want to testify. So in that case, certainly there's a one-on-one targeted contact between a party to the case and this witness who does have important information to bring forth, and the communication is don't come forward. Counsel, have you encountered cases in which employers have communicated to their current and former employees, we don't want you to be cooperating with this lawsuit that an employee is bringing against us? Yes, Judge. I think that was, well, a case. Yeah. Yes, that's right, yes. Is that the kind of thing, a district judge has discretion to police? It is, yes. When Facebook rants are something that the district judge has the discretion to police, of course. I thought that Judge Posner actually had the somewhat elegant solution as have it all come forth. They should be showing the Facebook post in screenshot form to the jury saying this is what the plaintiff, this is how the plaintiff communicates with her coworkers. This is how the plaintiff reacts to bringing a lawsuit. But that is not the. If some sanction is not an abuse of discretion, what amount do you think would be reasonable? An amount I would suggest something in the $1,000 to $5,000 range. I mean, I would suggest approximately $2,500. The district judge has a lot of discretion about that. The district judge does have a lot of discretion. Certainly, my opponent is a very capable attorney. But I submit, I put forth in the briefs that the affidavit from Frank Seibert didn't have the specific facts regarding Ms. Miller to establish. He had been her supervisor. You didn't put any evidence in to the contrary. That's my problem. He actually knew her work. He had worked with her in the firm. You said that he worked in the same division. Yeah, and so he'd worked with her. So he said $390. He was an experienced lawyer in Chicago. That's the kind of evidence that comes in. And you didn't say, no, people don't get $390. Here's evidence that they get $280. No, I agree with that, Your Honor. I wouldn't say that $390 per hour in this economy is extraordinarily high. No, it's not a wild amount. Definitely not, Your Honor. And as to the 43 hours? Oh, definitely. The judge talked about why, although that's a rather high number, why that seemed justifiable. Respectfully, it's a high number by any measure. In fact, Ms. Miller included the time that she took deposing the plaintiff, which, of course, she deposed the plaintiff with regard to the Facebook post, but also with regard to the entire lawsuit. I think that the 43 hours is extremely high, and especially when it yielded just one witness. In how much detail did you make this objection to the district court? Did you say, you know, here are the portions of the deposition not dealing with the sanction? Did you break it down? I actually did. I challenged particular orders, particular items. There were peer-to-peer conferences. I'm sorry I didn't put it all in the brief, but there were definitely several hours to prepare one brief or to research or to review file. I did have a more detailed breakdown in my response in the district court, which I've not reproduced here. But I do want to punctuate that the, I mean, of course, it's unsavory and reckless, and inconsistent with proper conduct for a litigant. But I still submit that the fact that she is clearly the speaker, she's bringing all this attention to herself by making the post, and that it's not directed to an individual person, but on an open 1,600-member forum distinguishes it, and specifically targets liars and the so-called brown nosers. So before you sit down, I know you're approaching your rebuttal time. Do you want to say anything about the merits? Most definitely, Judge, yes. Because the problem I have with the merits is the only time she seems to complain about race or sex or other protected basis of harassment is in 2009. There's no whiff of that in the 2012 complaint, and there's lots of reason not to have this very stale, you know, three-year-old complaint gain any weight here. It's very hard for me to see how she gets past judgment on that. I agree with Your Honor. The Tomatovich case does have the quote at 457 F3rd at 663. I cited it in the reply on page 7. The complaint must indicate that discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of harassment without indicating a connection to a protected class, or providing facts sufficient to create that inference is insufficient. So I would argue that she has provided facts without specifying that she is a member of a particular protected class. I submit that she's provided facts sufficient to create an inference of discrimination on the basis of complaining or on the basis of race or sex. I concede it's fairly oblique as far as the complaints of harassment. That's correct, Your Honor. I do suggest that the conduct which she endured does speak to retaliation, where both Sergeant Zarella is, they were sick of you and your two frums, two frums. But they didn't know about the earlier complaint. They say they did not know about the earlier complaint. I mean, what evidence, do you have any indirect evidence that it came to their attention that they did know about it? There was a time when Ms. Emerson complained about being assigned to work with Heilman, the person that she had complained about in the prior complaint. But she's not suing him. Right. No, she's not suing him. But Rachowski was involved. I believe that Rachowski was involved in her reassignment at that time. But I concede that there was, they knew that there had been a prior complaint, I think. They might not have known this. At least Rachowski, as her supervisor, did know, I submit. So with that, the posting on the IMAX system of her being a, apparently suffering from paranoid delusions and feeling unsafe in a hostile work environment because she works around inmates. And then that's Lieutenant Rachowski making that statement. And then requesting on the IMAX system again, something that I believe is usually done in private, that the officer be sent for a fitness for duty, a fitness for duty evaluation in regards to her mental state, clearly shows the animus, whether or not it makes up for it. And in reaction to that, when he received, after that, when he received Ms. Upperson's grievance about that, Rachowski's reaction or statement to her was, keep complaining if you want, nothing is going to happen to me. There's no question that both Lieutenant Rachowski and Sergeant Zarella viewed. Well, I'm sure they weren't in love with each other, but you know, it's. Right. Whether there's a claim is a different matter. If you want to save just a little bit of rebuttal time, you might consider doing that. I will do that. Thank you. Thank you. Ms. Miller. May it please the court. There are two issues on appeal in this case. First is whether the district court abuses its discretion when award sanctions in terms of attorney's fees for plaintiff's witness tampering. The second issue is whether the district court properly granted the defendants motion for summary judgment. With respect to the sanctions, the district court did not abuse its discretion. Actually, the defendants asked for dismissal of the case in light of the precedent, but the district court wanted to show leniency and award attorney's fees instead. The plaintiff posted a malicious and vindictive message on Facebook that's viewed by 1,600 of her colleagues, correctional officers, and she damaged the court's most important function of the truth-finding mission. She directly attempted to influence the outcome of the case by threatening witnesses. The court should have zero tolerance for that kind of behavior, and the court should try to deter that kind of behavior by plaintiff and others in the future. Not only does the district court have the inherent authority to provide sanctions in terms of attorney's fees, the court also has the authority under Rule 37B. And Judge Shader, in response to plaintiff's counsel's claim that the certified mail statement is too vague, Judge Shader correctly pointed out that it's a veiled threat that can and ought to be taken seriously. In fact, there was a witness in this case, Judge, and we provided a declaration under seal because he was scared that if it was filed publicly, Ms. Emerson would file a lawsuit against him or retaliate against him in other ways. And he, in that sealed declaration, he said that he believed the plaintiff was actually referring to this case when he saw that Facebook message and that the message was directed to him as a witness. So I wonder if you could talk a little bit, if we recognize that there are, in some sense, two issues here. One was this sanctionable conduct. Number two was the sanction chosen within reasonable boundaries. And I'd like you especially to talk about the number of hours, if we assume for the sake of argument, that the rate was grounded in the evidence. 43.2 hours? Your Honor, I want to first point out that plaintiff's counsel mentioned that plaintiff's deposition would have covered all topics. In fact, I included a time report that only accounted for 0.25 quarter of an hour. I spent 15 minutes talking with plaintiff during her deposition about her Facebook message, asking why she did it, when she did it, what she intended. She actually said she intended it to be viewed by her coworkers. So I did not, I think I deposed her over a course of eight hours. I only billed in terms of what I tried to seek in terms of fees. I only sought 15 minutes, Judge. Plaintiff's conduct was so egregious and prejudicial that I wanted to seek dismissal. I felt that dismissal was proper in this case, and I argued for it. And the judge disagreed, but I think that the defendants had every right to seek dismissal. But what were you doing in these 43.2 hours that are the basis of your request for the fees? We've accounted for a quarter of an hour at this point. Yes, Your Honor. I investigated the conduct by interviewing witnesses and reaching out to see who viewed these. Other employees, some of these 1,600 recipients? In addition to the 15 minutes I spent deposing plaintiff, I also prepared the motion for sanctions, and I also had to file the motion to seal. The only way this declarant would provide a declaration to me was if I promised him it would be under seal to protect his identity from Ms. Emerson. I also had to review multiple plaintiff's briefs. She did not provide just one brief in response to my motion for sanctions. There were more than one. And I also had to appear in court several times, Judge, with regard to the motion for sanctions. So in light of the plaintiff's egregious conduct, 43 hours was reasonable, and the judge agreed with that, and he did not abuse his discretion when he awarded me that, Judge. With respect to the merits of this case, there was no genuine issue of material fact, and the district court properly granted defendants' motion for a sovereign judgment for three reasons. Plaintiff failed to show any knowledge of the only protected activity in this case. Plaintiff also failed to show any adverse employment action. In other words, you're saying that she didn't show that the defendants knew about the 2009 complaint? Yes. Are you specific? Yes. And then third, there was no evidence of but for causal connection between the 2009 charge and any adverse employment action. The 2012 OPR complaint, like you said, Judge. Is the 2012 complaint resolved yet? I do not know, Judge, and that's not in the records. I would have to go outside of the record. I don't know. Seems quite a few years has gone by. Plaintiff actually admitted in her response to the defendant's 56.1 Statement of Facts that the 2012 OPR complaint does not mention any protected status, and it doesn't claim that what happened was due to any protected status. She admits that in the Statement of Facts, in her response to the Statement of Facts. And it's well established that general complaints of discrimination, unless it ties the complaint to some sort of protected status under Title VII, is not protected activity under Title VII. With respect to the 2009 IDHR charge, as discussed, there is no evidence that the actors in this case, the alleged actors in this case, Lieutenant Gruchowski and Sergeant Zarella, had any knowledge of the 2009 charge. In fact, again, in her response to the 56.1 Statement of Facts, plaintiff admitted that she never discussed the charge with either Lieutenant Gruchowski or Sergeant Zarella. So I thought you were also arguing, with respect to 2012, that none of the things that happened to her counted as an adverse employment action anyway. They move her from power wash to a tier assignment. Exactly, Judge. She claims that her assignment changed twice, from power wash to either the tier or dental. She also claims that she was ignored during roll call, that she was assigned to an officer that she didn't like on two or three occasions, even though she admits that nothing happened while she was assigned to that officer. She also claims that there were some comments that Lieutenant Gruchowski made, like, I can put you wherever I want, which is the truth. He was a ship commander, and he can put her wherever he wants, wherever he sees fit. In terms of Sergeant Zarella's refusal to back her up while her inmates were out, she had a partner. She had a cross-wing officer that she admitted during her deposition, was perfectly capable of backing her up, and she had no reason to believe he wouldn't. So it's well established that this type of conduct is just not the type of adverse employment action that's protected under Title VII. There may be some personality conflicts, and they just didn't get along, but it's just not actionable. And Title VII is not a civility code for the workplace. And finally, plaintiff failed to show any but-for causal connection between the only protected activity in this case, which is a 2009 charge, and any of the actions that she complains about. I raised this in my brief, in my appellee brief, and plaintiff doesn't address that argument at all or try to offer any but-for causal connection evidence. So for all these reasons, defendants respectfully request that this court affirm the district court's decisions. All right, thank you very much. Anything further, Mr. Greco? Yes, thank you. I did find the reference to the deposition on page 22. The counsel states that specifically this is defending the 43.2 hours devoted to addressing the witness, tampering, and intimidation. Specifically, defendant's counsel investigated plaintiff's conduct, deposed plaintiff regarding her conduct, prepared defendant's motion for sanctions, prepared defendant's motion to seal documents reviewed, plaintiff's briefs in response to the motion for sanctions. The R40 and R45, there are two, and appeared several times before the district court regarding the motion for sanctions. There are three court appearances listed. There might have been an additional one in which the events were discussed. So I did not provide the detailed breakdown and challenge to line items in my brief, but I submit that this does imply that the deposition was a significant part of the hours. As far as the overall case, there's a lot of hyperbole and invective in the defendant's response. I submit that we get outside the realm of the civility code and the super employment department with the composite of all of the events that the defendant has brought forth. And I see that my time is up. Thank you, Your Honor. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.